UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Tomeka Wiley,                                          Civil No. 06-4611 DWF/AJB)

          Plaintiff,

v.                                                              **MEMORANDUM
                                                                OPINION AND ORDER**

A & K Auto Sales; Jamal A. Al-Awamie;
Scott and Gloria Marina Englund
d/b/a Twin City Environments, an
assumed name; and Scott Englund,
individually,

          Defendants.

_____

Nicholas P. Slade, Esq., Barry & Slade, LLC, counsel for Tomeka Wiley.

Benjamin Myers, Esq., Dejvongsa, Myers & Associates, LLC, counsel for A & K Auto Sales, and Jamal A. Al-Awamie.

Geoffrey R. Colosi, Esq., Colosi & Associates LLC, counsel for Scott and Gloria Marina Englund.

_____

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Tomeka Wiley against Defendants Scott Englund and Gloria Englund, and a separate Motion for Summary Judgment brought by Wiley against Defendants A & K Auto Sales and Jamal A. Al-Awamie. For the reasons stated below, the Court grants Wiley's motions and awards damages in the amount of $4,400.

**BACKGROUND**

On or about January 10, 2006, Wiley contacted Scott Englund about purchasing a vehicle. On that same day, Wiley purchased a 1991 Oldsmobile Cutlass for $1,995 plus taxes and license fees, for a subtotal of $2,144.50. Wiley made an initial down payment of $500 and entered into a payment agreement with Scott Englund.[1] The agreement also included a separate $450 "set up charge." (Aff. of Nicholas Slade in Supp. of Mot. for Summ. J. ("Slade Aff.") ¶ 2, Ex. 1 (Dep. of Scott Englund ("S. Englund Dep.") at 35.) Wiley returned the Cutlass to Englund because there were problems with the heater. The Cutlass had additional problems, which Scott Englund could not fix. Wiley made her first planned payment in the amount of $200 on February 10, 2006. On or around February 13, 2006, Wiley and Scott Englund reached an agreement for the purchase of a Ford Escort for $1,995 plus taxes and license fees. Wiley then entered into a second retail installment contract, which included a $750 "payment set up charge." Wiley made monthly payments on this vehicle from March 2006 through July 2006. Wiley made partial payments of $100 each in August, September, and October 2006. On or about November 15, 2006, Wiley sent Scott Englund a letter stating that she was withholding all further payments based on a breach of contract for failure to transfer title. Scott Englund repossessed Wiley's vehicle on or around November 20, 2006.

Scott Englund was not licensed by the State of Minnesota as a dealer in used automobiles prior to the commencement of this action. In addition, Twin City

---

[1] Wiley entered into a Retail Installment Contract with Twin City Environments (also referred to as "TCE"), the name under which Scott Englund was doing business.

Environments is not licensed by the State of Minnesota as a dealer in used automobiles or to operate as a "Sales Finance Company."  A & K Auto Sales is a dealer of used automobiles and is licensed to operate a used car sales lot in Anoka, Minnesota, but not in Hennepin or Scott Counties.  Wiley asserts that Al-Awamie held the dealer's license for A & K Auto Sales.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that

there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Claims Against Scott Englund[2]

Wiley asserts various claims against Scott Englund, including violations of the Truth in Lending Act (15 U.S.C. § 1601, *et seq.*) ("TILA"), violations of the Minnesota Motor Vehicle Retail Installment Sales Act (Minn. Stat § 53C.01, *et seq.*) ("MMVRISA"), violations of the Consumer Fraud Act (Minn. Stat. § 325.69), wrongful repossession, and conversion. Wiley asserts that Defendants are liable for damages totaling $15,739.50 plus costs and reasonable attorney fees. Wiley's claimed damages break down as follows:

1. $2,000 for two separate violations of the Truth in Lending Act (15 U.S.C. § 1640);

2. $2,094 under Minn. Stat. § 53C.12, subd. 2, related to the sale of the Cutlass; or in the alternative $519.50 under Minn. Stat. § 53C.12, subd. 3;

3. $2,893.50 under Minn. Stat. § 53C.12, subd. 2, related to the sale of the Ford Escort; or in the alternative $810.50 under Minn. Stat. § 53C.12, subd 3;

4. $2,000 in actual damages under the Consumer Fraud Act (Minn. Stat. § 325F.69 and Minn. Stat. § 8.31);

5. $964.50 for the wrongful repossession; and

6. $5,787 for conversion.

---

[2] The parties focus their arguments on the liability of Scott Englund. Therefore, this order does not address any liability on the part of Gloria Marina Englund.

At the hearing regarding the present motions, Scott Englund indicated that he does not contest liability with respect to Wiley's claims. Therefore, the Court grants Wiley's motion for summary judgment on liability. The only remaining issue before the Court is the proper measure of damages. At the hearing, Scott Englund indicated that the issue of damages was properly before the Court, asserted that Wiley's damage claim is unreasonable, and made a plea for proportionality.

Wiley asserts that she is entitled to $2,000 under the private attorney general statute (Minn. Stat. § 8.31, subd. 3a) for the violation of the Minnesota Consumer Fraud Act, which prohibits fraud and misrepresentations related to the sale of merchandise. *See* Minn. Stat. §§ 325F.68-.69. Specifically, Minnesota Statute section 325F.69, subd. 1, provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

Minnesota Statute section 8.31, subd. 3a, allows private plaintiffs to seek damages if they are "injured" by violations of the Consumer Fraud Act:

> In addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 [which includes "the Prevention of Consumer Fraud Act (sections 325F.68 to 325F.70)"] may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court.

Wiley asserts that Scott Englund received $2,000 in consideration for the sale of the two vehicles. The record demonstrates that Wiley paid $500 in a down payment for

5

the Cutlass, made an additional $200 payment on that vehicle, and made $1,300 in payments on the Ford Escort. In total, Wiley paid $2,000 out-of-pocket to Scott Englund. The Court finds that Wiley is entitled to, and Scott Englund is liable for, Wiley's out-of-pocket damages in the amount of $2,000.

Wiley also asserts that she is also entitled to damages under the TILA. Generally, the TILA requires that a creditor make certain disclosures to borrowers. With respect to her damages claim under the TILA, Wiley points to 15 U.S.C. § 1640, which provides in relevant part:

> **(a) Individual or class action for damages; amount of award; factors determining amount of award**
> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person in any amount equal to the sum of –
> **(1)** any actual damage sustained by such person as a result of the failure;
> **(2)(A)(i)** in the case of an individual action twice the amount of any finance charge in connection with the transaction.

15 U.S.C. § 1640(a)(1) and (a)(2)(A)(i). Here, Wiley has made no showing of any actual damages incurred as a result of a violation of the TILA. Accordingly, she is not entitled to damages under 15 U.S.C. § 1640(a)(1). With respect to section 1640(a)(2)(A)(i), Wiley asserts that the "payment set up" fees totaling $1,200, constitute "finance charges." Scott Englund does not dispute that these were "finance charges" per se, but asserts that the fees are exempt from the statute because they were not labeled as such. He does not, however, provide any authority for this assertion. Therefore, the Court treats the "payment set up" fees as "finance charges." The record establishes that Wiley was

charged these fees in two separate transactions in the amounts of $450 and $750, totaling $1,200. The Court finds that Scott Englund is liable to Wiley in the amount of $2,400 (twice the amount of the finance charges) under 15 U.S.C. § 1640(a)(2)(A)(i).

Wiley also asserts that she is entitled to damages under the MMVRISA, which provides in part:

> In case of a fraudulent violation of any provision of sections 53C.01 to 53C.14, the buyer shall have a right to recover from the person committing such violation, to set off or counterclaim in any action by such person to enforce such contract an amount as liquidated damages, the whole of the contract due and payable, plus reasonable attorneys' fees.

Minn. Stat. § 53C.12, subd. 2. In addition, the MMVRISA provides:

> In case of a failure to comply with any provision of sections 53C.01 to 53C.14, other than a fraudulent violation, the buyer shall have a right to recover from the person committing such violation, to set off or counterclaim in any action by such person to enforce such contract an amount as liquidated damages equal to three times the amount of any time price differential charged in excess of the amount authorized by sections 53C.01 to 53C.14 or $50, whichever is greater, plus reasonable attorneys' fees.

Minn. Stat. § 53C.12, subd. 3. Wiley asserts that she is entitled to an award of $4,988 under this statute, which she claims represents that amount of the "whole of the contract due and payable" under Minnesota Statute section 53C.12, subd. 2. Alternatively, Wiley seeks $519.50 and $810.50 under Minnesota Statute section 53C.12, subd. 3. The Court concludes that Wiley has failed to demonstrate that she is entitled to damages under this statute. First, there has been no showing that there is a contract amount that is "due and payable." The record indicates that Scott Englund repossessed the Ford Escort and there is no indication that Scott Englund is asserting that Wiley is still liable under the contract.

Moreover, Wiley has not demonstrated how, without such a contract due and payable, she is entitled to damages under Minnesota Statute section 53C.12, subd. 2. The Court also finds that Wiley has failed to demonstrate that she is entitled to damages under Minnesota Statute section 53C.12, subd. 3. That section allows for an award of "liquidated damages equal to three times the amount of any time price differential charged in excess of the amount authorized by sections 53C.01 to 53C.14." Wiley simply states in a conclusory manner, and without affidavit support or any explanation, that the amount under this provision would total $1,330. The Court declines to award the requested damages under this statute for lack of support.

Finally, Wiley asserts that she is entitled to $964.50 and $5,787 for wrongful repossession and conversion, respectively. The Court declines to award such damages. The Court has already awarded Wiley damages for her out-of-pocket expenses for payments made on the contract. Wiley did not pay the contract in full and to award her additional damages over the amount she paid for the vehicle would be inappropriate here, particularly because Wiley has not demonstrated that she suffered any actual damages other than her out-of-pocket expenses.

### III. Claims Against A & K Auto Sales and Al-Awamie

Wiley also moves for summary judgment against A & K Auto Sales and Al-Awamie. Wiley's claims against A & K Auto Sales and Al-Awamie include claims for violations of the Minnesota State Odometer Act, Minn. Stat. § 325.13, *et seq.*, violations of the Consumer Fraud Act, fraudulent misrepresentation, and breach of

express warranty. Wiley seeks actual damages, damages pursuant to Minnesota Statute section 325E.16, and further relief the Court deems just and appropriate.

A & K Auto Sales is a dealer of used automobiles and is licensed to operate a used car sales lot in Anoka, Minnesota. Wiley asserts that Al-Awamie held the dealer's license for A & K Auto Sales. Wiley bases her motion for summary judgment against these two defendants primarily on their failure to respond to certain Requests for Admission. In particular, pursuant to A & K Auto Sales and Al-Awamie's failure to respond to Requests for Admissions, they are deemed to have admitted that A & K Auto Sales was not licensed to sell used cars in Hennepin or Scott Counties; that Scott Englund was an agent for A & K Auto Sales at the time Wiley purchased the two vehicles from Scott Englund; and that A & K Auto Sales permitted Scott Englund to operate as its agent from a non-licensed location.

A& K Auto Sales and Al-Awamie concede that they failed to respond to Wiley's Requests for Admission. However, A & K Auto Sales and Al-Awamie maintain that they did not at any time authorize or give permission to Scott Englund to use their name, property, or corporate or personal resources. A & K Auto Sales and Al-Awamie also maintain that the only basis for Wiley's claims arises from their failure to respond to Requests for Admission, but that the subsequent deposition of Scott Englund demonstrates that he had no authorization to act on behalf of A & K Auto Sales. Based on this representation, A & K Auto Sales and Al-Awamie assert that it would be unfair to hold them accountable in this action.

The Court cannot ignore A & K Auto Sales and Al-Awamie's failure to respond to Wiley's Requests for Admission. A matter is deemed admitted if a party fails to timely respond to such a request. Fed. R. Civ. P. 36(c). Moreover, there is evidence in the record that the Ford Escort that Wiley purchased from Scott Englund was bought from a third-party by A & K Auto Sales on February 8, 2006. There is no evidence that ownership of the Ford Escort changed after that date and before Wiley purchased the vehicle from Scott Englund. Therefore, there is evidence of a connection between A & K Auto Sales, Al Awamie, and Scott Englund.

Based on A & K Auto Sales and Al-Awamie's deemed admissions and the record evidence indicating that A & K Auto Sales owned the car sold to Wiley, the Court grants Wiley's motion as to liability with respect to A & K Auto Sales and Al-Awamie. Insofar as Wiley seeks actual damages, the Court notes that it has already determined those damages to be $2,000. A & K Auto Sales and Al-Awamie will be jointly and severally liable with Scott Englund for those damages. Wiley further seeks damages under Minnesota Statute section 325E.16. In addition to actual damages, that statute allows the Court, in its discretion, to increase the award of damages up to three times the actual damages sustained. *See* Minn. Stat. § 325E. 16, subd. 3.[3] The Court declines to treble the damages in this case.

---

[3]  Minn. Stat. section 325E. 16, subd. 3 reads:

> **Civil action.** Any person injured by a violation of sections 325E.13 to 325E.16 shall recover the actual damages sustained together with costs and disbursements, including a reasonable attorney's fee, provided that the

(Footnote Continued On Next Page)

**IV.     Motion to Withdraw**

At the hearing on this matter, counsel for A & K Auto Sales and Al-Awamie represented that he previously attempted to withdraw as counsel from his representation in this case. Counsel represented to the Court that he has not had any significant contact with his clients in over two years. Counsel reasserted his standing motion to be discharged.

An attorney may be permitted to withdraw as counsel of record only by order of the Court. D. Minn. LR 83.7(a). "Withdrawal without substitution may be granted only by a motion before the Court, for good cause shown." D. Minn. LR 83.7(c). Based on a review of the file, the Court finds that good cause exists to allow Benjamin Myers, Esq., and the law firm of Dejvongsa, Myers & Associates, LLC, to withdraw from representing A & K Auto Sales and Al-Awamie.

## CONCLUSION

1. Wiley's Motion for Summary Judgment (Doc. No. 32 ) is **GRANTED.**

2. Wiley's Motion for Summary Judgment (Doc. No. 35 ) is **GRANTED.**

3. Scott Englund, A & K Auto Sales and Al-Awamie are liable to Wiley for actual damages in the amount of $2,000.

---

(Footnote Continued From Previous Page)
court in its discretion may increase the award of damages to an amount not to exceed three times the actual damages sustained or $1,500, whichever is greater.

11

  4. Scott Englund is liable to Wiley for damages under the Truth in Lending Act in the amount of $2,4000

  5. The Motion to Withdraw as Counsel of Record for A & K Auto Sales and Al-Awamie is **GRANTED**.

  6. The Court will consider the propriety and any amount of attorney fees by a separate motion.

Dated:  December 15, 2008     s/Donovan W. Frank
               DONOVAN W. FRANK
               Judge of United States District Court